**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| J.J.P.B, on behalf of himself, | § | |
| and his minor child, A.E.P.F., | § | |
| Plaintiff, | § | Civil Action No. 7:23-cv-133 |
| v. | § | |
| | § | |
| United States of America, | § | |
| Defendants. | § | |

## <u>DEFENDANT'S MOTION TO DISMISS</u>

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

DANIEL DAVID HU
Chief, Civil Division

By:    ***s/ Christopher D. Pineda***
CHRISTOPHER D. PINEDA
Assistant United States Attorney
S.D. Tex. No. 1055715
Texas Bar No.   24070420
600 E. Harrison, Suite 201
Brownsville, Texas 78520
(956) 548-2554/Fax: (956) 548-2775
Email: Christopher.Pineda@usdoj.gov

Attorney-in-Charge for
United States of America

i

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ....................................................................................... iv

I.   OVERVIEW ........................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ..........................................2

    A.   Relevant statutory framework for noncitizens with prior removal orders .......................2

    B.   Statutory framework for immigration custody relating to unaccompanied minors .........2

    C.   Flores Agreement requirements ................................................................3

    D.   Executive Branch directives regarding immigration enforcement ..................................5

    E.   Plaintiffs' factual history ........................................................................5

    F.   Procedural history ..................................................................................6

III. ISSUES ...............................................................................................................7

IV. LEGAL STANDARDS .......................................................................................8

    A.   Rule 12(b)(1) motion to dismiss ............................................................8

    B.   Rule 12(b)(6) motion to dismiss ............................................................8

    C.   Federal Tort Claims Act .........................................................................9

V.   ARGUMENT .....................................................................................................10

    A.   The Court lacks jurisdiction over Plaintiffs' FTCA claims ..........................................10

        1.   Plaintiffs' claims are barred by the FTCA's discretionary function exception ...................................................................................11

           a.   Legal standard for the discretionary function exception ...................11

           b.   The decisions resulting in the separation of Plaintiffs—including the decisions to reinstate Jacinto's prior removal order, detain him in a secure adult detention facility, and designate Andres a UAC—are discretionary in nature and susceptible to policy analysis ......................................................13

               I.   The government's actions were discretionary ...............................13

II. The government's actions were susceptible to policy analysis ...................17

c. Plaintiffs' remaining claims are also barred by the discretionary function exception ........................................................................................18

d. Plaintiffs' assertion of unconstitutional conduct does not preclude application of the discretionary function exception ...........................................20

2. Plaintiffs' claims are barred by the FTCA's misrepresentation exception .............25

3. Plaintiffs' claims are barred by the FTCA's exception for actions taken while reasonably executing the law ...............................................................25

4. Plaintiffs' claims are barred because there is no private person analogue .............27

B. Plaintiffs fail to state a claim under Texas law ...............................................29

1. Plaintiffs failed to state a negligence claim under Texas law ...................................29

a. Plaintiffs pled an intentional tort, not a negligence claim ................................29

b. Plaintiffs' negligence claim also fails because they did not plead a physical injury ........................................................................................31

c. Insofar as Plaintiffs seek to recover damages for mental anguish based on a "special relationship," Plaintiffs fail to state a cognizable negligence claim under Texas law ...............................................................33

2. Plaintiffs fail to state a loss of consortium claim ....................................................34

3. Plaintiffs fail to state an IIED claim ........................................................................35

a. The conduct at issue is privileged ...........................................................35

b. Plaintiffs do not plead extreme and outrageous conduct ...................................36

PRAYER AND CONCLUSION ........................................................................................38

CERTIFICATE OF SERVICE ...........................................................................................39

CERTIFICATE OF WORD COUNT ..................................................................................39

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Accardi v. United States*,
   435 F.2d 1239 (3d Cir. 1970)........................................................................ 25

*Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*,
   510 F.3d 1 (1st Cir. 2007).......................................................................... 38

*Aguilar v. United States*,
   2017 WL 6034652 (S.D. Tex. 2017)............................................................ 34

*Ahern v. United States*,
   2017 WL 2215633 (S.D. Tex. 2017)............................................................ 23

*Alfonso v. U.S.*,
   752 F.3d 622 (5th Cir. 2014)........................................................................ 8

*Anderson v. Creighton*,
   483 U.S. 635 (1987)................................................................................... 25

*Antonelli v. Crow*,
   2012 WL 4215024 (E.D. Ky. 2012)............................................................ 19

*Arizona v. United States*,
   567 U.S. 387 (2012)................................................................................... 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................... 9

*Bailey v. United States*,
   2016 WL 6086117 (W.D. Tex. 2016).......................................................... 36

*Baldassaro v. United States*,
   64 F.3d 206 (5th Cir. 1995)........................................................................ 12

*Ballard v. Burton*,
   444 F.3d 391 (5th Cir. 2006)...................................................................... 23

*Barry v. United States*,
   --- F.Supp.3d ---, 2023 WL 2996101 (S.D. Tex. Mar. 31, 2023).............. 31, 32, 33, 34

*Barton v. Barr*,
   140 S. Ct. 1442 (2020) ................................................................................ 2

*Berkovitz*,
   486 U.S............................................................................................... 21

*Bhuiyan v. United States*,
   772 F. App'x 564 (9th Cir. 2019)................................................................ 28

*Borquez v. United States*,
   773 F.2d 1050 (9th Cir. 1985)..................................................................... 26

*Bradford v. Vento*,
   48 S.W.3d 749 (Tex. 2001)......................................................................... 37

*Brownback v. King*,
   141 S. Ct. 740 (2021) .......................................................................... 10, 29

*Browning-Ferris Indus., Inc. v. Lieck*,
   881 S.W.2d 288 (Tex. 1994)...................................................................... 35

*Bryan v. United States,*
  913 F.3d 356 (3d Cir. 2019) .................................................................. 22
*Bub Davis Packing Co. v. United States,*
  443 F. Supp. 589 (W.D. Tex. 1977) ....................................................... 26
*Buchanan v. United States,*
  915 F.2d 969 (5th Cir. 1990) ................................................................. 25
*Bultema v. United States,*
  359 F.3d 379 (6th Cir. 2004) ................................................................. 18
*Bunikyte, ex rel. Bunikiene v. Chertoff,*
  2007 WL 1074070 (W.D. Tex. 2007) ................................................ 4, 15
*Burnett Ranches, Ltd. v. Cano Petroleum, Inc.,*
  289 S.W.3d 862 ..................................................................................... 30
*Burney v. Carrick,*
  170 F.3d 183 (5th Cir. 1999) ................................................................. 24
*Butz v. Economou,*
  438 U.S. 478 (1978) .............................................................................. 22
*C.M. v. United States,*
  2023 WL 3261612 (W.D. Tex. May 4, 2023) ........................................ 20
*Campillo v. U.S. Penitentiary Beaumont, Tex.,*
  203 F. App'x 555 (5th Cir. 2006) .......................................................... 23
*Campos v. United States,*
  888 F.3d 724 (5th Cir. 2018) ............................................. 10, 11, 12, 22
*Castro v. Cabrera,*
  742 F.3d 595 (5th Cir. 2014) ................................................................. 25
*Chen v. United States,*
  854 F.2d 622 (2d Cir. 1988) .................................................................. 27
*Childers v. A.S.,*
  909 S.W.2d 282 (Tex. App.—Fort Worth 1995, no writ) ....................... 30
*City of Tyler v. Likes,*
  962 S.W.2d 489 (Tex. 1997) .................................................................. 33
*Clark v. Martinez,*
  543 U.S. 371 (2005) .............................................................................. 14
*Creditwatch, Inc. v. Jackson,*
  157 S.W.3d 814 (Tex. 2005) .................................................................. 37
*D.A. v. United States,*
  2023 WL 2619167 (W.D. Tex. Mar. 23, 2023) ...................................... 20
*D.B. v. Poston,*
  119 F.Supp.3d 472 (E.D. Va. 2015) ...................................................... 16
*De La Cruz-Flores v. United States,*
  2017 WL 4276812 (W.D. Tex. 2017) ........................................ 13, 14, 18
*Dickson v. United States,*
  11 F.4th 308 (5th Cir. 2021) ................................................................. 11
*Dillard Dep't Stores, Inc. v. Silva,*
  106 S.W.3d 789 ..................................................................................... 37
*Doe v. The Geo Group, Inc.,*
  2017 WL 835209 (W.D. Tex. 2017) .................................................. 30, 31

*Dunn v. City of Elgin, Illinois,*
  347 F.3d 641 (7th Cir. 2003)..................................................................... 38
*Durbin v. City of Winnsboro,*
  135 S.W.3d 317 ............................................................................................. 29
*Elgamal v. Bernacke,*
  714 F. App'x 741 (9th Cir. 2018)............................................................... 28
*Elgamal v. United States,*
  2015 WL 13648070 (D. Ariz. 2015) .......................................................... 28
*Estrada v. United States,*
  2014 WL 5823107 (S.D. Tex. 2014)........................................................... 36
*F.D.I.C. v. Citizens Bank & Tr. Co. of Park Ridge, Ill.,*
  592 F.2d 364 (7th Cir. 1979)...................................................................... 26
*F.D.I.C. v. Meyer,*
  510 U.S. 471 (1994) .............................................................................. 10, 20
*Fabian v. Dunn,*
  2009 WL 2567866 (W.D. Tex. 2009) ......................................................... 23
*Felipe v. United States,*
  2023 WL 2383784 (D.N.M. Mar. 6, 2023) ........................................... 27, 36
*Fitzpatrick v. Copeland,*
  80 S.W.3d 297 ............................................................................................... 32
*Flores v. Lynch,*
  828 F.3d 898 (9th Cir. 2016)................................................................... 4, 5
*Flores v. Rosen,*
  984 F.3d 720 (9th Cir. 2020) ...................................................................... 4
*Freeman v. United States,*
  556 F.3d 326 (5th Cir. 2009)........................................................................ 9
*Fulmer v. Rider,*
  635 S.W.2d 875 ...................................................................................... 29, 30
*Gandarillas-Zambrana v. B.I.A.,*
  44 F.3d 1251 (4th Cir. 1995)...................................................................... 15
*Garza v. United States,*
  161 F. App'x 341 (5th Cir. 2005)............................................................... 23
*Garza v. United States,*
  881 F. Supp. 1103 (S.D. Tex. 1995) .......................................................... 36
*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ..................................................................................... 21
*Harrison v. Fed. Bureau of Prisons,*
  464 F.Supp.2d 552 (E.D. Va. 2006) .......................................................... 19
*Hersh v. Tatum,*
  526 S.W.3d 462 (Tex. 2017) ........................................................................ 36
*Hooks v. Landmark Indus., Inc.,*
  797 F.3d 309 (5th Cir. 2015)........................................................................ 8
*Howery v. Allstate Ins. Co.,*
  243 F.3d 912 (5th Cir. 2001)........................................................................ 8
*Huff v. Neal,*
  555 F. App'x 289 (5th Cir. 2014)............................................................... 15

*Hydrogen Tech. Corp. v. United States*,
   831 F.2d 1155 (1st Cir. 1987) ............................................................... 26

*In re FEMA Trailer Formaldehyde Products*,
   668 F.3d 281 (5th Cir. 2012) ............................................................ 9, 27

*In re Wagner*,
   560 S.W.3d 309 (Tex. App.-Houston [1st Dist.] 2017, no pet.) ............................ 30

*Iracheta v. United States*,
   2015 WL 13559948 (S.D. Tex. 2015) ................................................ 14, 17, 18

*J.F.G. v. Hott*,
   921 F.3d 204 (4th Cir. 2019) ............................................................... 24

*J.P. v. United States*,
   2023 WL 4237331 (D. Ariz. June 28, 2023) ................................................. 15

*Janis v. United States*,
   2009 WL 564207 (S.D. Ind. 2009) .......................................................... 19

*Jeanmarie v. United States*,
   242 F.3d 600 (5th Cir. 2001) ................................................................ 9

*Johnson v. Sawyer*,
   47 F.3d 716 (5th Cir. 1995) ................................................................ 27

*Joiner v. United States*,
   955 F.3d 399 (5th Cir. 2020) ............................................................... 12

*Jones v. Hyman*,
   107 S.W.3d 830 (Tex. App.—Dallas 2003, no pet.) ......................................... 37

*Kroger Tex. Ltd. P'ship v. Suberu*,
   216 S.W.3d 788 (Tex. 2006) ................................................................ 37

*Lane v. Brockman*,
   2019 WL 360836 (N.D. Tex. 2019) .......................................................... 23

*Lane v. Halliburton*,
   529 F.3d 548 (5th Cir. 2008) ................................................................ 8

*Linder v. United States*,
   937 F.3d 1087 (7th Cir. 2019) .............................................................. 20

*Lineberry v. United States*,
   2009 WL 763052 (N.D. Tex. 2009) .......................................................... 18

*Lopez v. U.S. Immigration & Customs,
   Enf't*, 455 F. App'x. 427 (5th Cir. 2011) .................................................. 11

*Loughlin v. United States*,
   393 F.3d 155 (D.C. Cir. 2004) .............................................................. 12

*M.D.C.G. v. United States*,
   956 F.3d 762 (5th Cir. 2020) ............................................................ 11, 16

*Machado Serrano v. Sessions*,
   2018 WL 11452337 (W.D. Tex. 2018) ......................................................... 14

*Mazur v. U.S. I.N.S.*,
   957 F. Supp. 1041 (N.D. Ill. 1997) ......................................................... 28

*McElroy v. United States*,
   861 F. Supp. 585 (W.D. Tex. 1994) ......................................................... 35

*McNeily v. United States*,
   6 F.3d 343 (5th Cir. 1993) ................................................................. 25

*Moreno v. McAllen Indep. Sch. Dist.*,
    2016 WL 1258410 (S.D. Tex. 2016) ................................................................. 34

*Morris v. Dearborne*,
    181 F.3d 657 (5th Cir. 1999) ........................................................................... 24

*Ms. L. v. U.S Immigration & Customs,*
    *Enf't*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018) ............................................... 24

*Nat'l Union Fire Ins. Co. v. Bourn*,
    441 S.W.2d 592 ............................................................................................... 30

*Ortega v. U.S. Dep't of Homeland Sec.*,
    2018 WL 4222822 (W.D. La. 2018) ................................................................ 14

*Patel v. United States*,
    398 F. App'x. 22 (5th Cir. 2010) ............................................................... 21, 25

*Pena Arita v. United States*,
    470 F. Supp. 3d 663 (S.D. Tex. 2020) ................................................ 15, 19, 20

*Pena v. City of Rio Grande City*,
    879 F.3d 613 (5th Cir. 2018) ........................................................................... 30

*Porter v. United States*,
    473 F.2d 1329 (5th Cir. 1973) ......................................................................... 26

*Reagan v. Vaughn*,
    804 S.W.2d 463 (Tex. 1990) ........................................................................... 35

*Reed Tool Co. v. Copelin*,
    689 S.W.2d 404 (Tex. 1985) ........................................................................... 29

*Roberts v. Williamson*,
    111 S.W.3d 113 (Tex. 2003) ........................................................................... 34

*Rodriguez v. H.E. Butt Grocery Co., L.P.*,
    2021 WL 4597106 (Tex. App.-Corpus Christi 2021, no pet.) ....................... 35

*Ryan v. U.S. Immigr. & Customs,*
    *Enf't*, 974 F.3d 9 (1st Cir. 2020) .................................................................... 28

*Santos v. United States*,
    2006 WL 1050512 (5th Cir. 2006) .................................................................. 20

*Sea Air Shuttle Corp. v. United States*,
    112 F.3d 532 (1st Cir. 1997) ........................................................................... 28

*Smith v. Sneed*,
    938 S.W.2d 181 (Tex. App.-Austin 1997, no pet.) ........................................ 37

*Spotts v. United States*,
    613 F.3d 559 (5th Cir. 2010) ..................................................................... 12, 22

*Tex. Dep't of Pub. Safety v. Petta*,
    44 S.W.3d 575 (Tex. 2001) ............................................................................. 30

*Tsolmon v. United States*,
    2015 WL 5093412 (S.D. Tex.  2015) ..................................................  17, 18, 22

*Tsolmon v. United States*,
    841 F.3d 378 (5th Cir. 2016) ..................................................................... 14, 17

*Turner v. TDCJ*,
    2013 WL 3355768 ..................................................................................... 32, 34

*Ugalde v. W.A. McKenzie Asphalt Co.*,
    990 F.2d 239 (5th Cir. 1993) ........................................................................... 37

*United States v. Dominguez-Portillo*,
  2018 WL 315759 (W.D. Tex. 2018) .......................................................... 24
*United States v. Gaubert*,
  499 U.S. 315 (1991) ..................................................... 12, 18, 21, 23
*United States v. Olson*,
  546 U.S. 43 (2005) ................................................................ 27
*United States v. Vasquez-Hernandez*,
  314 F.Supp.3d 744 (W.D. Tex. 2018) ............................................ 4, 24
*Valadez v. United Indep. Sch. Dist.*,
  2008 WL 4200092 (S.D. Tex. 2008) ................................................ 34
*Van Dinh v. Reno*,
  197 F.3d 427 (10th Cir. 1999) .................................................... 15
*Verinakis v. Med. Profiles, Inc.*,
  987 S.W.2d 90 ..................................................................... 33
*Villafranca v. United States*,
  587 F.3d 257 (5th Cir. 2009) ...................................................... 36
*Villafuerte v. United States*,
  *2017 WL 8793751 (S.D. Tex. 2017)* ......................................... *32, 34*
*Waganfeald v. Gusman*,
  674 F.3d 475 (5th Cir. 2012) ...................................................... 19
*Westfall v. Erwin*,
  484 U.S. 292 (1988) ............................................................... 21
*Wilson v. Layne*,
  526 U.S. 603 (5th Cir. 1999) ...................................................... 21
*Wilson v. Monarch Paper Co.*,
  939 F.2d 1138 (5th Cir. 1991) ..................................................... 37
*Wolcott v. Sebelius*,
  635 F.3d 757 (5th Cir. 2011) ..................................................... 8, 9
*Wornick Co. v. Casas*,
  856 S.W.2d 732 (Tex. 1993) ....................................................... 37

## Statutes

6 U.S.C. § 279(a) ................................................................... 14
6 U.S.C. § 279(b)(2)(B) ............................................................. 14
6 U.S.C. § 279(g)(2) ............................................................. 14, 27
8 U.S.C. § 1231(a)(2) ............................................................... 13
8 U.S.C. § 1231(a)(5) ........................................................... 25, 47
8 U.S.C. § 1232(b)(1) ............................................................... 14
8 U.S.C. § 1232(b)(3) ......................................................... 14, 16, 37
8 U.S.C. § 1232(c)(3) ........................................................... 14, 17
8 U.S.C. § 1325(a) .................................................................. 16
8 U.S.C. § 1357(a)(2) ............................................................... 24
28 U.S.C. § 1346(b) ................................................................. 20
28 U.S.C. § 1346(b)(1) .............................................................. 38
28 U.S.C. § 2674 .................................................................... 38
28 U.S.C. § 2680(a) ............................................................. 24, 36

## **Rules**

FED. R. CIV. P. 12(h)(3) ........................................................................ 19

F FED. R. CIV. P. 12(b)(1) ............................................... 12, 19, 21, 40

FED. R. CIV. P. 12(b)(6) ................................................................ 20, 21

COMES NOW, the United States of America ("Defendant" or "United States") and files this motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I. OVERVIEW

In mid-May 2018, Plaintiff J.J.P.B. ("Jacinto") unlawfully entered the United States with his minor child A.E.P.F. ("Andres").[1] Jacinto, who had a prior removal order, was detained in a secure immigration detention facility until his removal to Honduras on May 30, 2018. Meanwhile, Andres was transferred to the care of the Department of Health and Human Services' Office of Refugee Resettlement (ORR), which placed him in transitional foster care while the ORR care provider identified a suitable sponsor. On October 2, 2018, Andres was released to an adult first cousin who was living in the United States.

Jacinto brings this action against the United States on his behalf and on behalf of his son Andres under the Federal Tort Claims Act (FTCA), seeking monetary damages arising from the family separation, based on three causes of action: negligence, loss of consortium, and intentional infliction of emotional distress (IIED).

The current Administration has denounced the prior practice of separating children from their families at the United States-Mexico border, condemned the human tragedy that occurred, and established a task force to continue efforts to reunify families who had been separated. The United States does not defend the policy choices that led to family separations under the prior Administration's policies. But those policy decisions do not give rise to tort liability. Plaintiffs' alleged injuries are not compensable under the FTCA because Congress has not waived the federal government's sovereign immunity from claims for money damages in these circumstances. And

---

[1] According to the complaint, Plaintiffs have been assigned the pseudonyms "Jacinto" and "Andres" for ease of reference. (Dkt. 1 ¶ 3, n.1.) The use of pseudonyms for these Plaintiffs was previously approved. (Dkt. 22.)

even if Plaintiffs could establish subject matter jurisdiction, their causes of action for negligence, loss of consortium, and IIED would still fail to state a claim under Texas law.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Relevant statutory framework for noncitizens with prior removal orders.[2]

Under the Immigration and Nationality Act (INA), any alien present in the United States without being admitted or paroled is inadmissible and subject to removal. *See* 8 U.S.C. § 1182(a)(6)(A)(i). When, as here, a noncitizen has illegally reentered the United States after having been removed, "the prior order of removal is reinstated from its original date." *Id.* § 1231(a)(5). The reinstated order "is not subject to being reopened or reviewed" and thus, the noncitizen "is not eligible and may not apply for any relief" under the immigration laws. *Id.* Aliens with reinstated orders of removal, such as Jacinto, are subject to detention under 8 U.S.C. § 1231(a)(2). Section 1231 authorizes the detention of an alien who "is ordered removed"; it provides that during the "90-day" period after the removal order becomes "final," the DHS Secretary "shall detain the alien." *Id.* § 1231(a)(2). The government also has the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *Id.* § 1231(g)(1). Noncitizens who enter the United States unlawfully may also be subject to criminal prosecution. *See, e.g., id.* §§ 1325, 1326.

### B. Statutory framework for immigration custody relating to unaccompanied minors.

Federal immigration law authorizes the United States to provide for the custody and care of minor children who are present in the United States without lawful immigration status. Specifically, ORR is charged with "the care and placement of unaccompanied alien children who

---

[2]    This brief uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

are in Federal custody by reason of their immigration status." 6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A). However, ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(b)(2)(B). Rather, once in ORR custody, there are detailed statutory and regulatory provisions that must be followed before the child is released to an approved sponsor. *See* 8 U.S.C. § 1232(c)(3). Among other things, Congress requires that a UAC "may not be placed with a person . . . unless [ORR] makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being" and that "[s]uch determination shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id.* § 1232(c)(3)(A). In some instances, a home study is required. *Id.* § 1232(c)(3)(B).

## C.   <u>Flores Agreement requirements.</u>

In 1996, the federal government entered into a settlement agreement referred to as the "Flores Agreement." *See, e.g., Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (Dkt.

101). The Flores Agreement "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the INS." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing Flores Agreement ¶ 9). The Homeland Security Act of 2002 abolished the Immigration and Naturalization Service (INS) under the Department of Justice (DOJ) and merged its legacy components into (1) Customs and Border Protection (CBP), (2) Immigration and Customs Enforcement (ICE), and (3) U.S. Citizenship and Immigration Services (USCIS). Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002). These components are within DHS. *See id.*

According to the Ninth Circuit, the Flores Agreement "unambiguously" applies both to unaccompanied minors and to minors who are encountered together with their parents or legal guardians. *Flores*, 828 F.3d at 901. Under the Flores Agreement, the legacy INS agencies must expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility. *Id.* at 902-03 (quoting Flores Agreement ¶ 12(A)). The legacy INS agencies must also "make and record the prompt and continuous efforts on its part toward . . . the release of the minor." *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (quoting Flores Agreement ¶ 14). Notably, the Flores Agreement applies only to minors. *Flores*, 828 F.3d at 901. It "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id.* at 906; *see also United States v. Vasquez-Hernandez*, 314 F.Supp.3d 744, 761 (W.D. Tex. 2018), *aff'd*, 924 F.3d 164 (5th Cir. 2019) ("[N]othing in the [Flores] agreement expresses a preference for releasing parents who have violated immigration laws."). Nor does the Flores Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Vasquez-Hernandez*, 314 F.Supp.3d at 761; *Bunikyte,*

4

*ex rel. Bunikiene v. Chertoff*, 2007 WL 1074070, at *16 (W.D. Tex. 2007). Though the Flores Agreement gives preference to release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

**D.**   **Executive Branch directives regarding immigration enforcement.**

On April 6, 2018, Attorney General Jefferson Sessions issued a "Memorandum for Federal Prosecutors along the Southwest Border" on "Zero-Tolerance for Offenses Under 8 U.S.C. § 1325(a)." U.S. DOJ Memorandum on Zero-Tolerance for Offenses Under 8 U.S.C. § 1325(a) (April 6, 2018), available at https://www.justice.gov/opa/press-release/file/1049751/download (the Zero-Tolerance Memorandum). The memorandum directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." *Id.* In addition, on May 4, 2018, Homeland Security Secretary Kirstjen Nielsen approved a policy of referring for prosecution, to the extent practicable, all adults amenable for illegal entry violations. Consistent with these directives, DHS began to refer for prosecution increased numbers of adults— including those traveling with children—who unlawfully entered the United States on the Southwest border in violation of § 1325. Minor children designated as UACs were transferred to ORR custody, as required by the TVPRA. *See* 8 U.S.C. § 1232(b)(3).

**E.**   **Plaintiffs' factual history.**

Jacinto and his son Andres ("Plaintiffs") are Honduran nationals who unlawfully entered the United States on or about May 15, 2018, between ports of entry near McAllen, Texas. (Dkt. 153 ¶¶ 15, 32; Dkt. 53-1 at 22–24, 26–29.) They were apprehended by Border Patrol for illegal entry and transported to the Rio Grande Valley Sector Centralized Processing Center (CPC) in

McAllen, Texas. (Dkt. 53-1 at 24, 27.) Jacinto previously had been arrested for unlawful entry and removed from the United States in 2012. (Dkt. 53-1 at 24; **Sealed Ex. 1**.)[3] Accordingly, Border Patrol issued notice, signed by Jacinto, reinstating his prior removal order under § 1231(a)(5), and detained him pending his removal. (*Id.*) Also, in a sworn statement, Jacinto admitted that he had been removed previously and that he had never applied for permission to re-enter the United States. (**Sealed Ex. 2**.)[4] As to Andres, Jacinto told agents he was claiming asylum on Andres' behalf. (Dkt. 153 ¶ 32.)

Because Border Patrol officers determined that Jacinto's detention pending his removal meant he would no longer be available to provide care and physical custody of his child, Andres was designated and processed as a UAC and transferred to ORR custody on May 17, 2018, pursuant to the TVPRA. (Dkt. 153 ¶¶ 33, 36, 43.) Andres was placed with Cayuga Centers in the Bronx, New York, and was eventually placed in foster care. (Dkt. 153 ¶¶ 36, 41; Dkt. 78 at 4.) On May 30, 2018, Jacinto was removed to Honduras. (Dkt. 153 ¶ 117; Dkt. 85 at 2.) On October 2, 2018, Andres was released from ORR custody and placed with his adult first cousin. (Dkt. 85 at 3.) In March 2019—about ten months after the separation—Jacinto returned to the United States and was reunited with his son Andres. (Dkt. 153 ¶¶ 3, 15, 36.) The family currently resides in Indiana and is pursuing asylum claims. (*Id.* ¶ 15.)

## F.   Procedural history.

The procedural history for this case is complex. It starts in 2019 in the District of Arizona, before Plaintiffs' FTCA claims against the United States were severed and transferred to this Court

---

[3]      Plaintiffs incorporate **Exhibit 1** (Notice of Intent/Decision to Reinstate Prior Order) by reference in their amended complaint, wherein they allege that Jacinto signed various documents. (Dkt. 153 ¶ 40) ("Jacinto's decision to sign these papers . . .").

[4]      Regarding **Exhibit 2** (Affidavit), *see supra* note 3. Jacinto now alleges that his "decision to sign these papers was the result of coercion and was in no way voluntary." (Dkt. 153 ¶ 120.)

this year, due to improper venue. For the sake of brevity, the United States incorporates herein its "Defendant's Case Synopsis" from its Joint Status Report, filed when the case was first transferred here. (Dkt. 148 at 4–7.) On October 16, 2023, Plaintiffs filed their amended FTCA complaint against the United States, restating their three claims—negligence, loss of consortium, and IIED—under Texas law, as the Court permitted under the scheduling order. (Dkts. 152; 153.) The United States' deadline is November 15 to file a motion to dismiss. (Dkt. 152.)

### III. <u>ISSUES</u>

1.       Whether Plaintiffs' FTCA claims are jurisdictionally barred by the discretionary function exception because the decisions resulting in Plaintiffs' separation were discretionary and susceptible to policy analysis.

2.       Alternatively, whether Plaintiffs' claims are jurisdictionally barred by the FTCA's exception for actions taken while reasonably executing the law.

3.       Alternatively, whether Plaintiffs' FTCA claims are jurisdictionally barred because there is no private person analogue to their claims.

4.       Assuming the Court has jurisdiction, whether Plaintiffs fail to state a cause of action for negligence because (a) they have pled an intentional tort, not a negligence claim; (b) they did not plead a physical injury, as required for a negligence claim; and (c) insofar as Plaintiffs seek mental anguish damages, there was no special relationship between the government and Plaintiffs authorizing recovery for such damages.

5.       Assuming the Court has jurisdiction, whether Plaintiffs failed to state a loss of consortium claim because (a) as to Jacinto's claim, Texas does not authorize a parent to recover consortium damages for non-fatal injuries to a child; and (b) as to Andres's claim, Texas does not

recognize loss of parental consortium unless the parent suffered "serious, permanent, and disabling *physical* injuries."

6.      Assuming the Court has jurisdiction, whether Plaintiffs fail to state an IIED claim because (i) the conduct at issue is privileged; and (ii) Plaintiffs did not plead extreme and outrageous conduct.

## IV. <u>LEGAL STANDARDS</u>

### A.      <u>Rule 12(b)(1) motion to dismiss</u>

Federal courts are courts of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), *cert. denied*, 534 U.S. 993 (2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). "[U]nder Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Alfonso v. U.S.*, 752 F.3d 622, 625 (5th Cir. 2014); *see also* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

### B.      <u>Rule 12(b)(6) motion to dismiss</u>

Rule 12(b)(6) also provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th

Cir. 2011). When considering a Rule 12(b)(6) motion, courts must accept as true all well-pleaded facts and allegations in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts need not, however, accept a plaintiff's legal conclusions. *Wolcott*, 635 F.3d at 763. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## C.    Federal Tort Claims Act

The United States generally "enjoys sovereign immunity from suit unless it has specifically waived immunity." *Jeanmarie v. United States*, 242 F.3d 600, 602 (5th Cir. 2001). "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009) The Federal Tort Claims Act (FTCA), which Plaintiffs invoke in their complaint, waives the United States' sovereign immunity for certain torts committed by federal employees while acting within the scope of their employment. 28 U.S.C. § 1346(b). However, "the FTCA contains numerous exceptions to the general waiver of immunity." *See Jeanmarie*, 242 F.3d at 602. "Waivers of sovereign immunity should be narrowly construed in favor of the United States." *In re FEMA Trailer Formaldehyde Products*, 668 F.3d 281, 287 (5th Cir. 2012)

Further, Section 1346(b) contains the following six requirements—all of which must be satisfied for an action to qualify within the FTCA's jurisdictional grant: the claim must be "'[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the

Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b) (bracketed numerals in original)). "[A] plaintiff must plausibly allege all six FTCA elements not only to state a claim upon which relief can be granted but also for a court to have subject-matter jurisdiction over the claim." *Brownback v. King*, 141 S. Ct. 740, 749 (2021). Accordingly, "where a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6)." *Id.* at n.8.

## V. <u>ARGUMENT</u>

### A. <u>The Court lacks jurisdiction over Plaintiffs' FTCA claims.</u>

The current Administration has disavowed policies during the prior Administration that resulted in the separations of families. Nonetheless, Congress has not waived the United States' sovereign immunity with respect to claims arising from those policies. For the reasons set forth below, Plaintiffs' claims should be dismissed for lack of jurisdiction. Their claims challenge discretionary decisions that are susceptible to policy analysis, including policies surrounding law enforcement, immigration, and national security. In addition, Plaintiffs challenge actions taken by federal employees reasonably executing federal immigration statutes and regulation. Moreover, these challenged actions do not have private person analogues. "Courts consider whether the FTCA applies via a Rule 12(b)(1) motion, because whether the government has waived its sovereign immunity goes to the court's subject matter jurisdiction." *Campos v. United States*, 888 F.3d 724, 730 (5th Cir. 2018).

1.   **Plaintiffs' claims are barred by the FTCA's discretionary function exception.**

    a.   **Legal standard for the discretionary function exception.**

The Court lacks subject matter jurisdiction over Plaintiffs' FTCA claims pursuant to the discretionary function exception (DFE). The DFE jurisdictionally bars "any claim that is based upon a Government employee's performance of a 'discretionary function or duty . . . whether or not the discretion involved be abused.'" *Campos*, 888 F.3d at 730 (citing 28 U.S.C. § 2680(a)). Whether a government official's actions fall within the DFE involves a two-part test. "The plaintiff has the burden of establishing that the test is not satisfied." *Id.* at 731.

*First*, "the relevant employees' conduct must be a 'matter of choice.'" *Id.* For example, "[i]f a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary." *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021). Conversely, the DFE is "inapplicable if the government employee's challenged conduct violated a *specific directive in a federal statute, regulation, or policy* . . . because an employee has no choice but to adhere to a mandatory rule." *M.D.C.G. v. United States*, 956 F.3d 762, 772 (5th Cir. 2020) (emphasis added); *see also Lopez v. U.S. Immigration & Customs Enf't*, 455 F. App'x. 427, 433 (5th Cir. 2011) ("[W]hen the policy fails to prescribe 'specific direction' as to what course of action an employee must follow, it generally fails to establish a nondiscretionary duty."). Plaintiffs have the "burden" to identify a specific mandate "that either directed or proscribed a course of action" to be taken by government officials. *See M.D.C.G.*, 956 F.3d at 772; *see also Campos*, 888 F.3d at 731 ("Campos argues that the [DFE] does not apply because the Government points to no statute or regulation to support its position . . . This argument reverses the proper legal inquiry. Campos, not the Government, must direct us to authority . . .") (cleaned up).

*Second*, "the choice or judgment must be of the kind that the discretionary function exception was designed to shield." *Campos*, 888 F.3d at 731 (cleaned up). "Because the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." *Spotts v. United States*, 613 F.3d 559, 568 (5th Cir. 2010) (citing *United States v. Gaubert*, 499 U.S. 315, 323 (1991)) (cleaned up). However, "the proper inquiry under prong two is not whether [the government agent] *in fact* engaged in a policy analysis when reaching his decision but instead whether his decision was susceptible to policy analysis." *Id.* at 572 (emphasis in original); *see also Gaubert*, 499 U.S. at 325 ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."). Moreover, "when established government policy allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when he exercises that discretion." *Baldassaro v. United States*, 64 F.3d 206, 211 (5th Cir. 1995). And the fact that a policy is later rescinded, as here, does not alter the DFE analysis. When the government discards a previous policy decision, "[t]he earlier judgment was no less a matter of policy because the later judgment was arguably better informed." *See Loughlin v. United State*s, 393 F.3d 155, 166 (D.C. Cir. 2004).

The plaintiff has the burden "[a]t the pleading stage . . . to 'invoke the court's jurisdiction by alleging a claim that is facially outside of the [DFE].'" *Joiner v. United States*, 955 F.3d 399, 404 (5th Cir. 2020). Thus, Plaintiffs have the "burden of establishing that the [DFE] does not apply at this stage in the proceedings." *Id.* If both prongs of the DFE test are met, the exception applies to "preclude[] subject matter jurisdiction over the plaintiffs' FTCA claims." *See Spotts*, 613 F.3d

at 573. This result applies even where the government may have been negligent in the performance of such discretionary acts. *See* 28 U.S.C. § 2680(a) (stating the DFE applies "whether or not the discretion involved [was] abused.") The DFE analysis does not call upon the court to evaluate the merits of a given policy. As the legislative history of the FTCA explains, the statute's limited waiver of sovereign immunity was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

> **b.**  **The decisions resulting in the separation of Plaintiffs—including the decisions to reinstate Jacinto's prior removal order, detain him in a secure adult detention facility, and designate Andres a UAC—are discretionary in nature and susceptible to policy analysis.**

Plaintiffs' claims based on their separation are barred by the DFE because those decisions involved an element of judgment or choice and are susceptible to policy analysis.

### I.      The government's actions were discretionary.

The first prong of the DFE test is met here because immigration officers were faced with numerous decisions involving an element of judgment or choice, resulting in the separation of Plaintiffs, once they were apprehended for entering the United States unlawfully.

*First*, the Plaintiffs' arrest involved an element of judgment or choice. The agents had the "power" to arrest Plaintiffs. *See* 8 U.S.C. § 1357(a)(2). "They are not mandated by the statute to arrest every alien whose arrest may be justified. They simply have power to do so. This indicates an element of discretion in the statute." *De La Cruz-Flores v. United States*, 2017 WL 4276812, at *4 (W.D. Tex. 2017). The agents also need a "reason to believe" that any noncitizens violated U.S. law. *See* 8 U.S.C. § 1357(a)(2). "There is no precise standard for defining when an agent has 'reason to believe.' Rather, agents must, in their day-to-day operations and interactions, evaluate the factual circumstances they encounter and make judgment calls about whether the evidence they

have gives them 'reason to believe' a given person is detainable." *De La Cruz-Flores*, 2017 WL 4276812, at *4.

*Second*, the decision to initiate removal proceedings against Jacinto involved an element of judgment or choice. "[I]t appears incontrovertible that there is an element of judgment and choice in pursuing deportation proceedings against an individual." *See Iracheta v. United States*, 2015 WL 13559948, at *9 (S.D. Tex. 2015); *see also Arizona v. United States*, 567 U.S. 387, 396 (2012) ("A principal feature of the removal system is the broad discretion exercised by immigration officials.") As the Fifth Circuit has noted, "decisions on when, where, and how to investigate and whether to prosecute have long been found to be core examples of discretionary conduct for which the United States maintains its immunity"—and that principle applies "not just to officials enforcing the criminal laws, but also to officials enforcing the immigration laws." *Tsolmon v. United States*, 841 F.3d 378, 383 (5th Cir. 2016). Moreover, reinstatement of a prior removal order, as occurred here with Jacinto, can only occur if DHS[5] "finds" that a noncitizen "reentered the United States illegally after having been removed." *See* 8 U.S.C. § 1231(a)(5). Such a "finding" involves an element of judgment or choice.

*Third*, the agents' decision about where to detain Jacinto, pending his removal proceeding, involved discretion. Plaintiffs argue that "Andres and Jacinto could have been housed together in, for instance, a Family Residential Center." (Dkt. 153 ¶ 39.) But "[u]ltimately, Congress has given [DHS][6] *discretion* to choose the location where an alien who is in custody may be detained." *Machado Serrano v. Sessions*, 2018 WL 11452337, at *3 (W.D. Tex. 2018) (citing § 1231(g)(1)) (emphasis added); *accord Ortega v. U.S. Dep't of Homeland Sec.*, 2018 WL 4222822, at *4 (W.D.

---

[5]     Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" now mean the Secretary of Homeland Security. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).
[6]     *See supra* note 5.

La. 2018), *rep. & rec. adopted*, 2018 WL 4211864 (W.D. La. 2018) ("It is within [DHS's] discretion to place Ortega in a detention facility of [its] choosing.").[7]

This discretion necessarily entails decisions regarding with whom noncitizens are detained, including decisions about whether adults and minors can be detained together. *See Pena Arita v. United States*, 470 F. Supp. 3d 663, 686 (S.D. Tex. 2020) (agreeing with the United States that "the decision to prosecute rests in the absolute discretion of the United States Attorney General, and once the discretionary decision to prosecute is made, the separation of prisoners from their families is plainly legal"); *see also  J.P. v. United States*, 2023 WL 4237331, at *6 (D. Ariz. June 28, 2023) ("Thus, the Court finds that the United States' decision to detain Plaintiffs for illegally entering the country, and the United States' decision to detain Plaintiffs at separate facilities, were acts of prosecutorial discretion subject to deference from the Court, absent additional circumstances."); *Huff v. Neal*, 555 F. App'x 289, 298–99 (5th Cir. 2014) (per curiam) ("[T]he placement of any inmates on any occasion, as well as the investigation of any internal issue at any time, inherently requires that prison officials exercise their discretion . . . Moreover, this is the type of conduct that the discretionary function was designed to shield[.]").

Further, although the *Flores* Agreement contains some provisions concerning the detention of minors, it does not specifically prescribe a course of action and thus does not remove the government's discretion. The *Flores* Agreement also does not require release of a parent or mandate that parents be housed with their children—and indeed does not apply to parents at all. *See Bunikyte*, 2007 WL 1074070, at *16 ("The Flores Settlement was drafted in response to the

---

[7]        *See also Gandarillas-Zambrana v. B.I.A.*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another."); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) ("The Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from this [§ 1231(g)(1)] language.").

complaint of a group of unaccompanied minor aliens. Its provisions, though applicable to minors detained with their families, do not specifically contemplate family detention.") Nor do Plaintiffs cite to any "specific directive in a federal statute, regulation, or policy" that prescribes a specific course of action that the government was required to take in connection with the immigration detention of Jacinto and Andres. *See M.D.C.G.*, 956 F.3d at 772. Thus, the challenged decision regarding the location of Plaintiffs' detention was the result of discretion.

*Fourth*, the agents' determination that Andres was "unaccompanied" within the meaning of the TVPRA was a discretionary decision. Among other things, in determining that Andres was a UAC, the agents had to decide whether Andres had a "parent or legal guardian in the United States [] available to provide care and physical custody." *See* 6 U.S.C. § 279(g)(2); *see also D.B. v. Poston*, 119 F.Supp.3d 472, 482 (E.D. Va. 2015), *aff'd in part, vacated in part, remanded sub nom. D.B. v. Cardall*, 826 F.3d 721 (4th Cir. 2016) (noting that "DHS/CBP's determination that R.M.B. was a UAC at the time of apprehension" in South Texas was a "discretionary federal agency action"). Specifically, the agents had to determine whether Jacinto's reinstated removal order and detention pending removal made him unavailable to "provide care and physical custody" to Andres. Additionally, according to the complaint, the agents had questions at the time as to whether Andres was really Jacinto's son. (Dkt. 153 ¶ 33.) The agents' judgment call under the circumstances that Andres was a UAC, even if ultimately incorrect or unwise, is protected by the DFE.

*Fifth*, and finally, Plaintiffs also appear to challenge ORR employees' conduct as it relates to the alleged separation of Plaintiffs for 4.5 months,[8] from May 17 to October 2, 2018, when

---

[8]    The complaint references a "ten-month" separation (Dkt. 153 ¶ 36), but Andres was in ORR custody for 4.5 months, not ten months. Between October 2, 2018, and March 2019 (when Jacinto returned to the United States), Andres was in the custody of his adult first cousin.

Andres was released to his adult first cousin. (Dkt. 85 at 3.) As to this period that Andres was in ORR custody, the timing of his release resulted from discretionary decisions regarding the health and safety of children in the government's custody. Under § 1232(c)(3)(A), once Andres was classified as a UAC, ORR could not release him to the custody of another individual unless ORR "ma[de] a *determination* that the proposed custodian is capable of providing for the child's physical and mental well-being." That "determination" is discretionary as well. Plaintiffs have not alleged any specific deadline imposed by statute or regulation for ORR to release children to custodians.

## II.    The government's actions were susceptible to policy analysis.

As to second prong of the DFE test, the agents' actions were of the kind that the discretionary function exception was designed to exclude from liability. The challenged actions— including the decisions to reinstate Jacinto's prior removal order, to detain him in a secure adult detention facility, and to designate Andres a UAC and transfer him to ORR custody—that resulted in Plaintiffs' separation are grounded in public policy considerations and are decisions the DFE was designed to shield.

"Federal courts have consistently held that law enforcement decisions regarding immigration and criminal investigations and arrests are 'clothed in public policy considerations.'" *Tsolmon v. United States*, 2015 WL 5093412, at *11 (S.D. Tex.  2015), *aff'd*, 841 F.3d 378 (5th Cir. 2016) (collecting authorities); *see also Iracheta*, 2015 WL 13559948, at *10 ("Immigration-related decisions are clearly grounded in political policy.") (collecting authorities). "Operating with limited resources" and "tasked with detecting and preventing illegal entry of aliens into the United States," agents "must weigh various policy considerations in deciding which suspected

aliens to detain, [and] how to detain them, and how to investigate claims . . . by detained aliens." *See Tsolmon*, 2015 WL 5093412, at *11.

Specifically, the discretionary actions which resulted in Plaintiffs' separation were susceptible to policy analysis. *See De La Cruz-Flores*, 2017 WL 4276812, at *6 ("Here, the ICE agents' 'discretionary actions in investigating [Mr. De La Cruz–Flores's] immigration status, interpreting the information received, and in deciding' to detain him pending removal (even for 24 days) 'were susceptible to policy analysis. Thus, the second prong of the discretionary function has been satisfied."). Accordingly, these "decisions rendered as a result of immigration proceedings, should be shielded by the [DFE]" because "[s]uch a result follows from the intent to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *See Iracheta*, 2015 WL 13559948, at *10 (citing *Gaubert*, 499 U.S. at 323).

> ### c.     <u>Plaintiffs' remaining claims are also barred by the discretionary function exception.</u>

Plaintiffs also appear to challenge certain conditions of their custody by referring to a Border Patrol holding facility as an "*hielera*" and complaining about the frequency of communications between Jacinto and Andres and the alleged conduct of Andres' foster parents. (Dkt. 153 ¶¶ 33, 36.)

As to any detention conditions claims, courts have repeatedly held that such claims are barred by the DFE because the way the government manages and operates its detention facilities involves discretionary decisions susceptible to policy considerations. *See, e.g., Lineberry v. United States*, 2009 WL 763052, at *5–*7 (N.D. Tex. 2009) (applying DFE to inmate's allegations of "inadequate staffing, overcrowding, and improper placement in a low security facility with illegal aliens and gang members"); *see also Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004)

(applying DFE to decisions "not to have bed rails, and . . . to have inmates notify unit management of a bunk pass"); *Antonelli v. Crow*, 2012 WL 4215024, at *3 (E.D. Ky. 2012) ("FTCA claims which contend that various conditions of a prisoner's confinement violate [statute] therefore fall within the [DFE], and the Court lacks subject matter jurisdiction to entertain them.") (collecting cases). In *Pena Arita*, the court specifically rejected the plaintiffs' contention that associated determinations regarding conditions of confinement such as transfer decisions, where and how to house detainees, or appropriate medical care were "nondiscretionary" in nature. *See Pena Arita*, 470 F.Supp.3d at 683. Instead, concluding that the DFE applied because the government decision-making regarding conditions of confinement was "susceptible to policy analysis," the court observed that it "must generally defer to the expertise of prison officials and is not to substitute its judgment for the considerations of such officials." *Id.* at 691.

Regarding telephone use in a detention context, the Fifth Circuit has "ruled that prisoners have no right to unlimited telephone use" and has observed that other courts have found that "a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution." *See Waganfeald v. Gusman*, 674 F.3d 475, 485 (5th Cir. 2012) (cleaned up) (collecting cases); *see also Harrison v. Fed. Bureau of Prisons*, 464 F.Supp.2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim."); *Janis v. United States*, 2009 WL 564207, at *14 (S.D. Ind. 2009) ("[T]elephone usage policy is discretionary with the authority of prison administrators, and the exercise of that discretion requires the balancing of policy considerations such as budget, facilities, staff resources, etc.").

Finally, as to any claims related to conduct by Cayuga Centers, the contractor responsible for Andres' placement with foster parents, courts have "conclusively held that the decision to hire

a contractor, the choice of contractor, and the degree of oversight over a contractor are all policy-based considerations that are shielded by the discretionary function exception." *Pena Arita*, 470 F.Supp.3d at 691 (collecting cases).

### d.   Plaintiffs' assertion of unconstitutional conduct does not preclude application of the discretionary function exception.

That Plaintiffs claim certain alleged conduct violated the Constitution does not alter the DFE analysis. Congress did not create the FTCA to address constitutional violations, but rather, to address violations of state tort law committed by federal employees. *See Meyer*, 510 U.S. at 477 (recognizing that "§ 1346(b) does not provide a cause of action for" a "constitutional tort claim"). Nor should Plaintiffs be permitted to circumvent the FTCA's bar on constitutional torts by recasting their constitutional claim into an argument that "no one has discretion to violate the Constitution" as part of the DFE analysis. *See Santos v. United States*, 2006 WL 1050512, at *3 (5th Cir. 2006) ("In an attempt to save his claims from the [DFE], Santos renews . . . his argument that the acts of which he complains . . . also violate the Eighth Amendment, rendering the [DFE] inapplicable because 'no one has discretion to violate another's constitutional rights.' [But] . . . the Eighth Amendment offers no help to Santos in this action because the government has not waived its immunity with regard to constitutional torts.") (cleaned up); *see also Linder v. United States*, 937 F.3d 1087, 1090 (7th Cir. 2019) ("[T]he theme that 'no one has discretion to violate the Constitution' has nothing to do with the [FTCA], which does not apply to constitutional violations[.]").[9]

---

[9]     *But see C.M. v. United States*, 2023 WL 3261612, at *42 (W.D. Tex. May 4, 2023) ("Plaintiffs have carried their burden to show that the [DFE] is inapplicable based upon their plausible procedural due process violation."); *D.A. v. United States*, 2023 WL 2619167, at *10 (W.D. Tex. Mar. 23, 2023) (finding DFE inapplicable because "the court parts ways with its sister court in *Pena Arita v. United States* and joins many district courts around the country that have found forced family separations in comparable circumstances likely unconstitutional" and thus "Defendant likely did not have discretion to separate Plaintiffs") (cleaned up).

Moreover, as noted, the Supreme Court has explained that when a "*federal statute, regulation, or policy* specifically prescribes a course of action for an employee to follow," there is no further discretion to exercise. *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536) (emphasis added); *but see Patel v. United States*, 398 F. App'x. 22, 28 (5th Cir. 2010) ("The [DFE] does not apply if the challenged act exceeds the scope of the actor's authority as designated by statute or the Constitution."). But assuming arguendo that this well-established formulation includes the Constitution in the list, it is no different: in some cases, the Constitution may establish such a specific prescription that removes an official's discretion, but the requirement of specificity applies with the same force whether the prescription is found in the Constitution or a statute.

The Supreme Court has long recognized that conduct may be discretionary even if it is later determined to have violated the Constitution. The common law doctrine of official immunity applies to the exercise of "discretionary functions" even when the conduct violated the Constitution, so long as the constitutional right was not defined with sufficient specificity that the official should have known the act was prohibited. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *see also Wilson v. Layne*, 526 U.S. 603, 614–15 (1999) (applying the "discretionary function[]" formulation and holding that officers were entitled to qualified immunity because, although their conduct violated the Fourth Amendment, the law was not clearly established at the time).

Thus, when the Supreme Court in *Berkovitz* held that a federal mandate must "specifically prescribe[]" conduct in order to overcome the DFE, it referred to official immunity precedent, underscoring that the two standards operate in tandem. 486 U.S. at 536 (citing *Westfall v. Erwin*,

484 U.S. 292, 296–97 (1988)). Accordingly, the DFE is not made inapplicable by every allegation of unlawful or unconstitutional conduct, but only by a showing that the government official's discretion was cabined by a specific, clearly established directive, accompanied by plausible assertions that the specific directive was violated. S*ee, e.g., Bryan v. United States*, 913 F.3d 356, 364 (3d Cir. 2019) ("Because . . . the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the DFE.).

Indeed, even before it specifically addressed the qualified immunity standards applicable to federal employees, the Supreme Court in *Butz v. Economou*, 438 U.S. 478 (1978), recognized that the DFE would apply even if alleged conduct might later be held unconstitutional. The *Butz* Court held that officials sued for violations of constitutional rights were entitled to qualified, but not absolute immunity. Were it otherwise, the Court explained that the recently recognized *Bivens* remedy would be illusory, and, as relevant here, it noted that "no compensation would be available from the Government, for the [FTCA] prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused." *Id.* at 505. *Butz* and subsequent decisions thus leave no doubt that conduct which violates the Constitution may nonetheless fall within the scope of the discretionary function exception.

The Fifth Circuit has not, in a controlling opinion, addressed under what circumstances an allegation of a constitutional violation removes discretion under the DFE. *See Campos*, 888 F.3d at 735 ("This Court has not yet determined whether a constitutional violation, as opposed to a statutory, regulatory, or policy violation, precludes the application of the [DFE].") (quoting *Spotts*, 613 F.3d at 569). Thus, "the current state of the Fifth Circuit's jurisprudence on this issue is unclear." *Tsolmon*, 2015 WL 5093412, at *10. However, in two unpublished opinions, the Fifth Circuit has held that a constitutional violation only removes discretion if it prescribed a specific

course of conduct. *See Garza v. United States*, 161 F. App'x 341, 343–44 (5th Cir. 2005) (rejecting plaintiff's allegation that Eighth Amendment violation precludes application of DFE, but instead deciding to "join [its] sister circuits in recognizing that . . . the Eighth Amendment's prohibition against cruel and unusual punishment [does not] define a non-discretionary course of action specific enough to render the [DFE] inapplicable."); *Campillo v. U.S. Penitentiary Beaumont, Tex.*, 203 F. App'x 555, 557 (5th Cir. 2006) (per curiam) ("We agree with the other circuits that have held that . . . the prohibition against cruel and unusual punishment [does not] define[] a non-discretionary course of action specific enough to render the [DFE] inapplicable."[10]

Several district courts in Texas, including in this District, have agreed with *Garza*. *See, e.g., Ahern v. United States*, 2017 WL 2215633, at *10 (S.D. Tex. 2017), *rep. & rec. adopted*, 2017 WL 2821949 (S.D. Tex. 2017) ("adopt[ing] the reasoning articulated in *Garza* and conclud[ing] that the constitutional rights afforded to Plaintiff under the Fifth Amendment as a pretrial detainee fail to define a set course of conduct with respect to his medical care that would be considered to be non-discretionary."); *Fabian v. Dunn*, 2009 WL 2567866, at *8 (W.D. Tex. 2009) (adopting the reasoning in *Garza* to conclude that the UAC noncitizen plaintiffs' FTCA claims are barred by the DFE and rejecting argument that the Fifth Amendment mandated a specific course of action); *Lane v. Brockman*, 2019 WL 360836, at *3-4 (N.D. Tex. 2019), *rep. & rec. adopted*, 2019 WL 359215 (N.D. Tex. 2019) (relying on *Garza* to hold DFE applicable to defeat claim alleging constitutional violation).

No Supreme Court or Fifth Circuit decision has removed any official's discretion with respect to any of the alleged actions at issue here by "specifically prescrib[ing] a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322. Indeed, as the Fourth Circuit observed, "we

---

[10]   In the Fifth Circuit, unpublished decisions are not treated as precedent, but they can be relied upon as persuasive authority. *See Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006).

. . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal." *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210 (4th Cir. 2019); *see also United States v. Dominguez-Portillo*, 2018 WL 315759, at *6 (W.D. Tex. 2018), *aff'd sub nom. United States v. Vasquez-Hernandez*, 314 F. Supp. 3d 744 (W.D. Tex. 2018), *aff'd*, 924 F.3d 164 (5th Cir. 2019) ("[T]he case law provides little guidance on how such parental rights are actually manifested when a parent charged with a petty misdemeanor illegal entry offense is separated from their child who allegedly accompanied them across the border."); *see also id.* (noting "lack of clearly established parental rights in these circumstances and under case law"); *Vasquez-Hernandez*, 314 F. Supp. 3d at 763 ("[A]ny time the government detains or imprisons a parent for criminal activity, that parent's rights as to her children are implicated . . . But if that kind of interference were actionable under the Eighth Amendment, every imprisoned parent would arguably have a claim. That is not the state of the law."); *Ms. L. v. U.S Immigration & Customs Enf't*, 310 F. Supp. 3d 1133, 1143 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019) ("[P]arents and children may lawfully be separated when the parent is placed in criminal custody[.]").

Plaintiffs appear to assert that the separation violated their right to family integrity. "[T]he Supreme Court recognized that the right to family integrity is a form of liberty guaranteed by the due process clause of the Fourteenth Amendment." *Morris v. Dearborne*, 181 F.3d 657, 667 (5th Cir. 1999). However, "[t]he assertion of a *general* constitutional right that is clearly established is not sufficient; 'the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense . . . [so] that a reasonable official would understand that what he is doing violates that right.'" *Burney v. Carrick*, 170 F.3d 183, at *3 (5th

Cir. 1999) (per curiam) (emphasis in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).[11]

## 2. **Plaintiffs' claims are barred by the FTCA's misrepresentation exception.**

Plaintiffs also repeatedly allege that they were "deceived" or "tricked" or "lie[d]" to by government agents. (*Id.* ¶¶ 35, 40, 41, 99.) To the extent Plaintiffs base any FTCA claim on allegations that government agents "deceived" or "tricked" them into waiving their rights, the government has not waived its sovereign immunity for any such claim. "The FTCA explicitly excepts claims for misrepresentation and deceit." *Patel*, 398 F. App'x. at 28 (citing 28 U.S.C. § 2680(h)); *see also McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993) ("This exclusion encompasses claims for negligent as well as intentional misrepresentation. It also covers both affirmative acts of misrepresentation and omissions of material fact.") (cleaned up).

## 3. **Plaintiffs' claims are barred by the FTCA's exception for actions taken while reasonably executing the law.**

Plaintiffs' claims relating to the decision to transfer Andres to the custody of ORR are independently precluded because the FTCA prevents the United States from being held liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). This exception, which "exempt[s] actions mandated by statute or regulation . . . if the actor has exercised due care," was enacted by Congress to protect "from judicial scrutiny the decisions of legislative bodies." *See Buchanan v. United States*, 915 F.2d 969, 971 (5th Cir. 1990); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (noting claim based

---

[11]    This same result holds true to the extent Plaintiffs assert that the DFE should not apply based on alleged violations of the Fourth Amendment or the Fifth Amendment's equal protection clause. Plaintiffs have only generally invoked these Constitutional provisions but have not alleged the violation of a clearly established right. *See, e.g., Castro v. Cabrera*, 742 F.3d 595, 601 (5th Cir. 2014) ("Alien detainees—including those who present facially valid documentation—have no Fourth Amendment rights in the immigration context.").

on "enforcement of 'rules and regulations'" barred by § 2680(a)). Thus, where a government employee exercised due care as contemplated by statute or regulation, the claim must be dismissed for lack of subject matter jurisdiction. *See, e.g., Bub Davis Packing Co. v. United States*, 443 F. Supp. 589, 593 (W.D. Tex. 1977), *aff'd*, 584 F.2d 116 (5th Cir. 1978) ("The duty of 'due care' is addressed to the proper implementation of the statutes and regulations."); *F.D.I.C. v. Citizens Bank & Tr. Co. of Park Ridge, Ill.*, 592 F.2d 364, 370, n.6 (7th Cir. 1979) ("Citizens' claim is based upon the acts of FDIC in the execution of [a statute]. If FDIC did commit a tort, it resulted from a misinterpretation of [the statute], not from acting without due care."); *Borquez v. United States*, 773 F.2d 1050, 1052–53 (9th Cir. 1985) ("Liability for duties delegated pursuant to statute is forbidden."); *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1160–61 & n.5 (1st Cir. 1987) (holding that exception barred FTCA claim for destruction of prototype after FBI dismantled it during criminal investigation); *Porter v. United States*, 473 F.2d 1329, 1337 (5th Cir. 1973) (holding that exception barred property damage claim of Lee Harvey Oswald's widow for damage to her late husband's personal effects during FBI's investigation into President John F. Kennedy's assassination).

Here, the United States is required to "transfer the custody" of unaccompanied children to the care of ORR "not later than 72 hours after" determining that there is no parent or legal guardian available to provide care and physical custody absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). In this case, the government made the determination that there was no parent or legal guardian available to provide care and physical custody for Andres on account of the discretionary decisions to reinstate Jacinto's prior removal order and detain him in an adult immigration detention facility, as authorized by statute. Once those protected determinations were made, the TVPRA required that Andres be transferred to ORR custody. The enforcement of that statutory

command cannot form the basis of an FTCA claim. *See S.E.B.M. by & through Felipe v. United States*, 2023 WL 2383784, at \*16 (D.N.M. Mar. 6, 2023) (holding that minor's placement in ORR custody was protected by exception for reasonably executing the law).

### 4.   Plaintiffs' claims are barred because there is no private person analogue.

Plaintiffs' claims also fail because the government acts that Plaintiffs challenge have no private person analogue. The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (cleaned up). In other words, "[t]he alleged federal violations also must constitute violations of duties 'analogous to those imposed under local law.'" *Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir. 1995).

The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] 'in the performance of activities which private persons do not perform.'" *United States v. Olson*, 546 U.S. 43, 46 (2005) (cleaned up). "Whether a private person in 'like circumstances' would be subject to liability is a question of sovereign immunity and, thus, is ultimately a question of federal law." *In re FEMA*, 668 F.3d at 288. Further, "[b]ecause the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy." *Id.*

Because only the federal government has the authority to enforce federal immigration laws and make determinations concerning detention, there is no private person analogue that would support a claim under the FTCA. The alleged harms here stem from the federal government's decision to enforce federal immigration laws and hold Jacinto in custody pending immigration proceedings, resulting in his child's placement in the care and custody of ORR. The United States has not waived its sovereign immunity for such decisions to enforce federal law, as the decisions have no private-person counterpart. *See, e.g., Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) ("The challenged conduct of the Department of Transportation and FAA does not meet that 'private individual' standard."); *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign. It is too abecedarian a proposition to warrant citation of authority that a private party cannot initiate proceedings to remove a noncitizen from the country. Nor does removal remotely resemble any type of civil remedy available to private litigants.") (cleaned up); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, 2015 WL 13648070, at *3 (D. Ariz. 2015), *aff'd sub nom. Elgamal*, 714 F. App'x at 741 (recognizing that "immigration matters" are "an inherently governmental function"); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."); *Mazur v. U.S. I.N.S.*, 957 F. Supp. 1041, 1043 (N.D. Ill. 1997) (finding, "in matters relating to naturalization of noncitizens," "only the United States has the power to act[,]" and, "[a]ccordingly … there is no private analog under state law").

**B.**     <u>Plaintiffs fail to state a claim under Texas law.</u>

To the extent the Court exercises jurisdiction over one or more of Plaintiffs' claims, their claims should be dismissed for failure to state a claim upon which relief may be granted. Therefore, all of Plaintiffs' claims should be dismissed under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). *See Brownback*, 141 S. Ct. at 749, n.8.

    **1.**     <u>Plaintiffs failed to state a negligence claim under Texas law.</u>

        **a.**     <u>Plaintiffs pled an intentional tort, not a negligence claim.</u>

Plaintiffs have pled allegations, taken as true, of an intentional tort, not a negligence claim. Specifically, Plaintiffs repeatedly allege that the government separated families, including Jacinto and Andres, with the specific "intent" or "purpose" of "inflicting emotional distress" upon them, to "deter" or "send a message" to other "would-be immigrants" traveling to the United States. *See, e.g.*, Dkt. 153 ¶¶ 1, 5, 33–43, 63–87, 97–103. These are not allegations of negligence without any intent or purpose. Rather, the complaint (starting with the first paragraph) claims that the government *intended* to inflict harm on Plaintiffs.

Such allegations cannot sustain a claim for negligence. "The Texas Supreme Court [has] noted that the fundamental difference between a negligence cause of action and an intentional tort is not whether the defendant intended the acts, but whether the defendant intended the resulting injury." *Durbin v. City of Winnsboro*, 135 S.W.3d 317, 321 (Tex. App.-Texarkana 2004, pet. denied) (citing *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985)). "It is elementary that the words 'negligence' and 'intentional' are contradictory and that 'negligence' is not synonymous with 'intentional action.'" *Fulmer v. Rider*, 635 S.W.2d 875, 879–80 (Tex. App.—Tyler 1982, writ ref'd) (citing 65 C.J.S. Negligence s 1(7) (1966)). Stated differently, "the absence of an intent or purpose to inflict injury of which complaint is made is essential to the legal conception of

negligence." *In re Wagner*, 560 S.W.3d 309, 326 (Tex. App.-Houston [1st Dist.] 2017, no pet.) (Jennings, J., concurring) (citing 65 C.J.S. Negligence § 17 (2017)). For this reason, "negligence encompasses no [] mens rea, but rather the failure to act reasonably under the circumstances then present." *Burnett Ranches, Ltd. v. Cano Petroleum, Inc.*, 289 S.W.3d 862, 866 (Tex. App.-Amarillo 2009, pet. denied).

Additionally, "Texas courts in other contexts are well aware of the distinction between negligent and intentional torts, and have been unwilling to allow intentional torts to be re-cast as negligent ones to invoke different legal standards." *Doe v. The Geo Group, Inc.*, 2017 WL 835209, at *6 (W.D. Tex. 2017). For example, as the Fifth Circuit observed, the Texas Supreme Court has rejected a "thinly-sliced negligence claim in the context of a police seizure. It held that allegations that an officer 'negligently ignored police procedure by continuing [a] pursuit' and 'negligently ignored an order not to shoot at [a] car' were ultimately "intentional rather than negligent acts." *Pena v. City of Rio Grande City*, 879 F.3d 613, 625, n.19 (5th Cir. 2018) (citing *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)). In another case, a state appellate court found that "the negligence issues should not have been submitted" to the jury because the "whole record proves a concerted, intentional attack upon plaintiff." *Nat'l Union Fire Ins. Co. v. Bourn*, 441 S.W.2d 592, 596 (Tex. App.—Fort Worth 1969, writ ref'd); *see also Childers v. A.S.*, 909 S.W.2d 282, 291 (Tex. App.—Fort Worth 1995, no writ) ("We further believe that appellant should not be able to recover for intentional conduct under a negligence theory."); *Fulmer*, 635 S.W.2d at 881 ("Our research compels us to conclude that Fulmer's shooting of appellees was shown by all the evidence to be a willful and intentional act, and that appellees are not entitled to recover upon negligence . . .").

Under Texas law, Plaintiffs cannot merely "re-cast" intentional torts as negligent ones. *See The Geo Group, Inc.*, 2017 WL 835209, at *6. Because Plaintiffs cannot recover for intentional conduct under a negligence theory, the Court should dismiss Plaintiffs' negligence claim for failure to state a claim.

> **b.**     **<u>Plaintiffs' negligence claim also fails because they did not plead a physical injury.</u>**

Plaintiffs also fail to state an ordinary negligence claim because they do not allege a physical injury. Under Texas law, "[w]hen a plaintiff suffers physical injuries, the plaintiff may also recover for any accompanying and proximately caused mental anguish. Absent physical injury, however, a plaintiff's ability to recover damages for non-physical harm is limited." *Barry v. United States*, --- F.Supp.3d ---, 2023 WL 2996101, at *6 (S.D. Tex. Mar. 31, 2023).

In this case, Plaintiffs allege that they "continue to suffer physical, mental, and emotional harm" from the "negligent acts of U.S. government officials, who purposefully acted to inflict harm and instill terror on them." (Dkt. 153 ¶ 11.) More specifically, due to the separation, Andres allegedly suffered "nightmares, sleepwalked, and was difficult to control." (*Id.* ¶ 42.) And today, Andres allegedly now "acts out more than he did before his separation from his father, has a short temper, is forgetful and inattentive, cries frequently, and is more withdrawn and struggles when apart from his parents." (*Id.* ¶¶ 44, 161.) Jacinto allegedly "continues to struggle with trauma caused by the separation from Andres and his powerlessness to help his son." (*Id.* ¶ 162.)

Accordingly, Plaintiffs make "no factual allegations regarding the nature or type of any physical harm," but only allege "various forms of emotional and psychological distress." *Barry*, 2023 WL 2996101, at *6. Absent a specific allegation of physical injury, they cannot recover for negligence based on this alleged mental anguish.

31

Two cases before federal district courts in the Southern District of Texas, involving unaccompanied minors asserting negligence claims under Texas law, are instructive. First, in *Barry v. United States*, the plaintiff filed suit under the FTCA alleging the government had ignored evidence that he was a minor and placed him in a South Texas adult detention facility for four months before releasing him to ORR custody. 2023 WL 2996101, at *1. Among other things, Barry brought a negligence claim, asserting he suffered "severe emotional, physical and mental injuries," "depression, anxiety, stress, and humiliation while detained," and he "cried frequently," was "unable to sleep due to his fear and anxiety," and experienced nightmares. *Id.* at *6. The court rejected the claim because, among other things, it found that "[t]hose allegations support a claim for mental anguish damages, but they do not represent an allegation of physical harm." *Id.* at *7.

Second, in *Villafuerte v. United States*, the plaintiff filed suit under the FTCA, asserting a negligence claim based on her detention conditions while in a CBP holding facility in South Texas. 2017 WL 8793751, at *3–4 (S.D. Tex. 2017). She alleged the following injuries while in detention: "pain from prolonged exposure to extremely low temperatures, sleep deprivation, hunger, stomach aches, headaches, weakness, dizziness, and symptoms of trauma, depression, and anxiety." *Id.* at *11. The court determined that the "symptoms alleged by [] Villafuerte are mental and emotional harms, not physical injuries." *Id.*; *see also Turner v. TDCJ*, 2013 WL 3355768, at *1 (Tex.App.-Beaumont 2013, pet. denied) (describing inmate's injury allegations of "extreme anxiety, mental anguish, distress, severe acute headaches, [and] traumatic depression" as a claim for negligent infliction of emotional distress); *Fitzpatrick v. Copeland*, 80 S.W.3d 297, 302-03 (Tex.App.-Ft. Worth 2002, pet. denied) (finding plaintiff's allegations were "clearly . . . outside the type of cases in which mental anguish has been compensable under Texas law" where she allegedly suffered PTSD, flashbacks, uncontrollable crying, debilitating mood shifts, sleep deprivation, intense grief,

depression, and anxiety); *Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 95 (Tex. App.-Houston [14th Dist.] 1998, pet. denied) (finding plaintiff's complaints "do not rise to the level of serious bodily injury," where he "became physically sick" after being told he was HIV positive, and experienced sweating spells, anxiety, depression, insomnia, and suicidal thoughts).

Likewise here, Plaintiffs have made no factual allegations of physical harm, as required to state a plausible claim for ordinary negligence under Texas law.

   c.   <u>**Insofar as Plaintiffs seek to recover damages for mental anguish based on a "special relationship," Plaintiffs fail to state a cognizable negligence claim under Texas law.**</u>

To the extent Plaintiffs seek damages for mental anguish based on a "special relationship," they fail to state a cognizable negligence claim under Texas law. "Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish." *City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex. 1997) (cleaned up). Texas does authorize mental anguish damages when they are the "foreseeable result of a breach of duty arising out of certain special relationships[.]" *Verinakis*, 987 S.W.2d at 95 (citing *Likes*, 962 S.W.2d at 494–496).

In support of their negligence claim seeking damages for mental anguish, Plaintiffs argue that the "United States, having custody and control over both Andres and Jacinto owed [them] a special duty of care under Texas law." (Dkt. 153 ¶ 32, 169.) Plaintiffs are incorrect. As to adult immigration detainees, such as Jacinto, Texas courts have limited the finding of a special relationship "exclusively to the scenario where a prisoner is harmed by a third party, not the guards themselves." *See Barry*, 2023 WL 2996101, at *7. And "[n]o court applying Texas law has ever concluded that a special relationship exists between a federal government agency and unaccompanied alien children in its custody." *Id.* At most, "[t]o the extent that Texas courts have recognized a special relationship between detention facility officials" and detainees, courts have

"limited the finding . . . exclusively to the scenario where a prisoner is harmed by a third party, not the guards themselves." *See id.* (citing *Aguilar v. United States*, 2017 WL 6034652, at *3 (S.D. Tex. 2017). "Consistent with this principle, federal courts applying Texas law have declined to find a special relationship between a guard and a detainee"—including unaccompanied minor detainees—"absent allegations of harms caused by third parties." *Id.* at *7; *see also id.* at *8 ("In the current matter, [the UAC-plaintiff] does not allege harm by a third party. . . . In the absence of such allegations, [he] fails to plead a cognizable negligence claim based on the existence of a special relationship."); *Villafuerte*, 2017 WL 8793751, at *12 ("[T]he Court agrees with the Government that no special relationship exception . . . exists in the present case because [the UAC-plaintiff] does not allege she was harmed by the conduct of a third party."); *see also Aguilar*, 2017 WL 6034652, at *3 ("[T]his Court declines to find a 'special relationship' exists between [the adult plaintiff-immigration detainee] and CBP guards and/or Defendant.").

Accordingly, because Plaintiffs failed to plead physical harm and they do not establish a special relationship, their negligence claims fail as a matter of law.

## 2.   Plaintiffs fail to state a loss of consortium claim.

Both Plaintiffs appear to assert a loss of consortium claim. (Dkt. 153 ¶¶ 173–176.) Both claims fail.

As to Jacinto, "Texas law is clear and it does not authorize a parent to recover consortium damages for non-fatal injuries to a child, whether due to negligent or intentional conduct." *Moreno v. McAllen Indep. Sch. Dist.*, 2016 WL 1258410, at *8 (S.D. Tex. 2016) (citing *Roberts v. Williamson*, 111 S.W.3d 113, 120 (Tex. 2003)); *see also Valadez v. United Indep. Sch. Dist.*, 2008 WL 4200092, at *1 (S.D. Tex. 2008) ("Texas law has not extended consortium rights to parents

of an injured child."). Accordingly, because there is no allegation that Andres experienced a fatal injury, his father Jacinto fails to state a consortium claim.

As to Andres, he also appears to state a claim for loss of consortium based on the separation from his father Jacinto. However, the Texas Supreme Court has "limited recovery of damages for loss of parental consortium to those cases where the parent has sustained 'serious, permanent, and disabling' *physical injuries*." *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 294 (Tex. 1994) (citing *Reagan v. Vaughn*, 804 S.W.2d 463, 466–67 (Tex. 1990), *on reh'g in part* (Mar. 6, 1991)) (emphasis added). As a result, Texas "does not recognize claims for parental loss of consortium based on purely emotional harm." *Rodriguez v. H.E. Butt Grocery Co., L.P.*, 2021 WL 4597106, at *8 (Tex. App.-Corpus Christi 2021, no pet.) (cleaned up); *accord Reagan*, 804 S.W.2d at 467 ("[A] child's claim for loss of parental consortium . . . does not include an element of mental anguish."). In this case, Andres alleges, in a conclusory manner, that the separation caused his father Jacinto to suffer "severe, permanent, and disabling injuries." (Dkt. 153 ¶ 174.) These injuries allegedly include "long-term health effects and emotional and psychological trauma." (*Id.*) However, as discussed above, Plaintiffs have not alleged with any specificity that Jacinto suffered "serious, permanent, and disabling *physical* injuries." *See Lieck*, 881 S.W.2d at 294 (emphasis added). Thus, both Plaintiffs fail to state a loss of consortium claim.

### 3. **Plaintiffs fail to state an IIED claim.**

#### a. **The conduct at issue is privileged.**

Plaintiffs' IIED claim fails because Defendant's alleged conduct was privileged. "[T]he United States may invoke any defenses available to individual law enforcement officers under Texas law." *McElroy v. United States*, 861 F. Supp. 585, 594 (W.D. Tex. 1994). In particular, the Fifth Circuit has recognized that the government may invoke state law enforcement privileges to

avoid liability in an FTCA action because "a privilege recognizes that, because of the nature of their duties, some public officers may perform certain acts that might otherwise be tortious if committed by someone not having those duties." *Villafranca v. United States*, 587 F.3d 257, 263 (5th Cir. 2009) (quoting *Garza v. United States*, 881 F. Supp. 1103, 1106 (S.D. Tex. 1995)) (cleaned up); *accord Estrada v. United States*, 2014 WL 5823107, at *3 (S.D. Tex. 2014); *Bailey v. United States*, 2016 WL 6086117, at *3 (W.D. Tex. 2016).

In this case, federal officers engaged in privileged conduct while enforcing existing federal immigration statutes. *See* Restatement (Second) of Torts § 46, comment g ("The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The [governmental] actor is never liable, for example, where [it] has done no more than to insist upon [its] legal rights in a permissible way, even though [it] is well aware that such insistence is certain to cause emotional distress."). Here, the challenged conduct—the separation of Plaintiffs—was a direct result of Jacinto's immigration detention once his prior removal order was reinstated, as authorized by 8 U.S.C. § 1231(a)(5). This law enforcement conduct was carried out pursuant to federal statute. Accordingly, the conduct was privileged and the United States cannot be held liable. *See, e.g., S.E.B.M.*, 2023 WL 2383784, at *19 (finding, where government separated minor child from parent, the government's actions "were protected by its privilege to prosecute").

    **b.**    **Plaintiffs do not plead extreme and outrageous conduct.**

"Extreme and outrageous conduct" is a required element for an IIED claim. *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017). The Texas Supreme Court "has set a high standard for 'extreme and outrageous' conduct, holding that this element is only satisfied if the conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* "The mere

fact that a defendant's conduct is tortious or otherwise wrong does not, standing alone, necessarily render [the conduct] 'extreme and outrageous.'" *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001). Indeed, "[t]he Supreme Court of Texas has set a high bar: '[m]eritorious claims for [IIED] are relatively rare precisely because most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous.'" *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815, n.1 (Tex. 2005) (collecting cases in which IIED claims were reversed for "failing to meet the exacting requirements of that tort"). Courts must determine as a matter of law "in the first instance, whether the alleged conduct may reasonably be regarded as so extreme and outrageous so as to permit recovery." *See Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993).

In this case, Plaintiffs allege extreme and outrageous conduct on the part of the government based on Jacinto and Andres' separation.[12] (Dkt. 153 ¶ 165.) But the challenged conduct here was a direct result of the government's enforcement of federal immigration law. Notably, in the criminal context, Texas courts have long recognized a strong public policy in the enforcement and prosecution of its laws. *See Smith v. Sneed*, 938 S.W.2d 181, 184 (Tex. App.-Austin 1997, no pet.) (collecting cases); *see also Jones v. Hyman*, 107 S.W.3d 830, 831–32 (Tex. App.—Dallas 2003, no pet.) (explaining that this policy "prohibits a person convicted of a crime from suing another for damages caused by conviction," including for claims of false imprisonment and IIED). Moreover, there is no dispute that this was Jacinto's second time unlawfully entering the United States, and thus the reinstatement of his removal order and his immigration detention, which resulted in the separation, were authorized as a matter of law. *See Dillard Dep't Stores, Inc. v.*

---

[12]    To the extent Plaintiffs' IIED claim is based on Jacinto's allegation that he was "openly mocked and taunted" by immigration officials (Dkt. 153 ¶ 3, 35), such an allegation is not sufficient. "Liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions." *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993) (citing *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991)).

*Silva*, 106 S.W.3d 789, 797 (Tex.App.-Texarkana 2003, pet. granted), *review granted, decision aff'd as modified*, 148 S.W.3d 370 (Tex. 2004) (noting that where probable cause exists for an arrest, the decision to initiate criminal proceedings "cannot constitute outrageous behavior."); *see also Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 22 (1st Cir. 2007) (recognizing that "every [detention pending removal] of a parent, like every lawful arrest of a parent, runs the risk of interfering in some way with the parent's ability to care for his or her children."); *Dunn v. City of Elgin, Illinois*, 347 F.3d 641, 651 (7th Cir. 2003) ("separating a parent from her child is not per se extreme and outrageous behavior").  Plaintiffs therefore fail to state an IIED claim based on their separation.[13]

## PRAYER AND CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court dismiss Plaintiffs' amended complaint (Dkt. 153) and all claims stated therein.

---

[13]     One final point regarding the period of separation that is not explained in the amended complaint. It is unclear whether Plaintiffs' IIED claim is based on the 4.5-month period that Andres was in ORR custody, or is it also based on the five months after Andres had been released from ORR custody and was in the custody of his adult relative in the United States.

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

DANIEL DAVID HU
Chief, Civil Division

By:     *s/ Christopher D. Pineda*
        CHRISTOPHER D. PINEDA
        Assistant United States Attorney
        S.D. Tex. No. 1055715
        Texas Bar No. 24070420
        600 E. Harrison, Suite 201
        Brownsville, Texas 78520
        (956) 548-2554/Fax: (956) 548-2775
        Email: Christopher.Pineda@usdoj.gov

        Attorney-in-Charge for
        United States of America

## CERTIFICATE OF SERVICE

I certify that on November 15, 2023, this document was filed by CM/ECF.

*s/ Christopher D. Pineda*
CHRISTOPHER D. PINEDA

## CERTIFICATE OF WORD COUNT

I certify that this motion, according to the word-count function of Microsoft Word, on which this motion was prepared, contains 12,470 words.

*s/ Christopher D. Pineda*
CHRISTOPHER D. PINEDA